# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

**FIDELITY & GUARANTY LIFE
INSURANCE COMPANY, f/k/a
OM FINANCIAL INSURANCE
COMPANY,**

      **Plaintiff,**

**v.**

**PATRICIA DUPREE BROOKS a/k/a
PAT BROOKS-DUPREE,**

      **Defendant.**

**CIVIL ACTION FILE
NO. 4:12-CV-0230-HLM**

## ORDER

This case is before the Court on the Motion for Summary Judgment filed by Plaintiff Fidelity & Guaranty Life Insurance Company ("Plaintiff") [118] and on the Motion for Partial Summary Judgment filed by Defendant Patricia Dupree Brooks ("Defendant Brooks") [119].

## I.      Initial Matters

As required by the Local Rules, Plaintiff filed a statement of material facts in support of its Motion for Summary Judgment ("PSMF") in connection with its Motion for Summary Judgment.   (Docket Entry No. 118-2.) Defendant Brooks, in turn, incorporated by reference the Parties' Stipulation of Undisputed Facts for Purposes of the Parties' Anticipated Cross-Motions for Summary Judgment on a Limited Issue (the "Stipulation") as her statement of material facts in support of her Motion for Partial Summary Judgment ("DSMF").   (Docket Entry No. 119-2.)   As required by the Local Rules, Plaintiff filed a response to DSMF ("PRDSMF").  (Docket Entry No. 120.)  Defendant

AO 72A

(Rev.8/8

Brooks, however, did not file a response to PSMF.  (<u>See</u> <u>generally</u> Docket.)

Local Rule 56.1B(2) states, in relevant part:

A respondent to a summary judgment motion shall include the following documents with the responsive brief:

a.   A response to the movant's statement of undisputed facts.

(1) This response shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts.

(2) This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of

3

AO 72A
(Rev.8/8
2)

the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1B.(1).

(3) The court will deem the movant's citations supportive of its facts unless the respondent specifically informs the court to the contrary in the response.

(4) The response that a party has insufficient knowledge to admit or deny is not an acceptable response unless the party has complied with the provisions of Fed.R.Civ.P.56(d).

N.D. Ga. R. 56.1B(2).  The United States Court of Appeals for the Eleventh Circuit has observed: "Local Rule 56.1 protects judicial resources by 'mak[ing] the parties organize the evidence rather than leaving the burden upon the district

4

AO 72A

(Rev.8/8

2)

judge.'" <u>Reese v. Herbert</u>, 527 F.3d 1253, 1268 (11th Cir. 2008) (alteration in original) (quoting <u>Alsina-Ortiz v. Laboy</u>, 400 F.3d 77, 80 (1st Cir. 2005)).   Local Rule 56.1 "also streamlines the resolution of summary judgment motions by 'focus[ing] the district court's attention on what is, and what is not, genuinely controverted.'"   <u>Id.</u> (alteration in original) (quoting <u>Mariani-Colon v. Dep't of Homeland Sec.</u>, 511 F.3d 216, 219 (1st Cir. 2007)).

Here, Defendant Brooks failed to respond in any fashion to PSMF.   (<u>See generally</u> Docket.)   The Court consequently deems all of the statements in PSMF admitted.

AO 72A
(Rev.8/8
2)

The Court next must determine the practical effect of deeming all of the statements in PSMF admitted.   The Eleventh Circuit has observed:

> The . . . district court [should] disregard or ignore evidence relied on by the respondent–but not cited in its response to the movant's statement of undisputed facts–that yields facts contrary to those listed in the movant's statement.  That is, because the non-moving party has failed to comply with Local Rule 56.1–the only permissible way for it to establish a genuine issue of material fact at that stage–the court has before it the functional analog of an unopposed motion for summary judgment.

Reese, 527 F.3d at 1268.  However, "after deeming [all of the statements in PSMF] to be admitted pursuant to Local Rule 56.1, the district court must then review [the Parties'] citations to the record to 'determine if there is, indeed, no genuine issue of material fact.'" Id. at 1269 (citations omitted)).

6

Thus, although the Court deems all of the statements in PSMF admitted, the Court still must review the citations to the record that Plaintiff provided to determine whether a genuine dispute remains regarding any material fact. Reese, 527 F.3d at 1269.  The Court does so infra Part II.A.

## II.  Background

### A.  Factual Background

Keeping in mind that when deciding a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court provides the following statement of facts.  See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary

7

AO 72A

(Rev.8/8

2)

judgment, court must review all facts and inferences in light most favorable to non-moving party).   This statement does not represent actual findings of fact.   In re Celotex Corp., 487 F.3d 1320, 1328 (11th Cir. 2007).  Instead, the Court has provided the statement simply to place the Court's legal analysis in the context of this particular case or controversy.

Effective December 11, 2000, Plaintiff issued a term life insurance policy (the "Policy") to Richard Keith ("Mr. Keith"). (DSMF ¶ 1; PRDSMF ¶ 1; PSMF ¶ 1.) The Policy contained a rider (the "Rider") that provided an accidental death benefit of $250,000.  (DSMF ¶ 1; PRDSMF ¶ 1; PSMF ¶ 1.) The Parties' Stipulation attached a true, correct, and authentic copy of the Rider as Exhibit 1 to the Stipulation. (DSMF ¶ 2; PRDSMF ¶ 2.)

8

The Rider provides, in relevant part: "Subject to this rider's provisions, we will pay this rider's benefit to the Beneficiary of the [P]olicy if the Insured's death occurs . . . [d]irectly and independently of all other causes as a result of accidental bodily injury." (DSMF ¶ 3; PRDSMF ¶ 3; PSMF ¶ 2.) The Rider also excludes benefits "if death results directly or indirectly from: . . . [v]oluntary taking of drugs, narcotics, barbituates, or sedatives, unless, as prescribed by a physician." (PSMF ¶ 3; DSMF ¶ 4; PRDSMF ¶ 4.)

Medical and pharmacy records document that: (a) on May 15, 2012, Mr. Keith purchased a ninety-day supply of zolpidem, 10 mg., that had been prescribed by his treating physician, Dr. Lee Battle, to take one per day at bedtime, for sleep; and (b) on June 14, 2012, Mr. Keith purchased a

9

ninety-day supply of tramadol, 27.5-325 mg., that had been prescribed by Dr. Battle, to take one tablet every six to eight hours, as needed for pain.  (DSMF ¶ 5; PRDSMF ¶ 5; PSMF ¶ 7.)  The Parties attached a true, correct, and authentic copy of the relevant medical and pharmacy records as Composite Exhibit 2 to the Stipulation.  (DSMF ¶ 6; PRDSMF ¶ 6.)

At some time between 10 p.m. on July 22, 2013, and 9:45 a.m. on July 23, 2012, Mr. Keith died.  (DSMF ¶ 7; PRDSMF ¶ 7; PSMF ¶ 4.)  Defendant Brooks discovered Mr. Keith inside his garage with the car's engine running. (PSMF ¶ 4.)

On July 24, 2012, the Bartow County Coroner conducted an autopsy of Mr. Keith.  (DSMF ¶ 8; PRDSMF

AO 72A
(Rev.8/8
2)

¶ 8.)  The Parties attached a true, correct, and authentic copy of the autopsy report as Exhibit 3 to the Stipulation. (DSMF ¶ 9; PRDSMF ¶ 9.)

The autopsy report states, under the heading "How Injury Occurred," that Mr. Keith "[o]perated car in enclosed garage." (DSMF ¶ 10; PRDSMF ¶ 10.)  The autopsy report records Mr. Keith's cause of death as "Automobile exhaust inhalation," and lists the manner of death as "suicide." (DSMF ¶ 10; PRDSMF ¶ 10; see also PSMF ¶ 5 ("The Coroner determined that [Mr. Keith] died from carbon monoxide poisoning, and ruled the death a suicide.").)

Mr. Keith's death certificate, which was issued on August 9, 2012, records the cause of Mr. Keith's death as "Automobile exhaust inhalation," and lists the manner of

11

death as "suicide."  (DSMF ¶ 11; PRDSMF ¶ 11.)  The Parties attached a true, correct, and authentic copy of Mr. Keith's death certificate as Exhibit 4 to the Stipulation. (DSMF ¶ 12; PRDSMF ¶ 12.)

As part of the autopsy, the Medical Examiner for the Georgia Bureau of Investigation (the "GBI") obtained blood samples from Mr. Keith, and had those samples analyzed by a laboratory for the presence of tramadol and zolpidem. (DSMF ¶ 13; PRDSMF ¶ 13; PSMF ¶ 6.)  On January 16, 2013, the GBI issued a toxicology report stating that Mr. Keith's blood tested positive for "tramadol, 2.8 mg/L" and for "zolpidem, 3.0 mg/L."  (DSMF ¶ 14; PRDSMF ¶ 14; PSMF ¶ 6.) The Parties attached a true, correct, and authenticated copy of the GBI's January 16, 2013, toxicology report for Mr.

12

Keith as Exhibit 5 to the Stipulation. (DSMF ¶ 15; PRDSMF ¶ 15.)

The levels of tramadol and zolpidem reflected in the GBI's toxicology report exceed therapeutic dosages. (DSMF ¶ 16; PRDSMF ¶ 16.)  According to Plaintiff, "[t]he levels indicated on the toxicology report were 10 times the therapeutic dosages as prescribed by Dr. Battle." (PSMF ¶ 9.)  Based on the medical and pharmacy records and the toxicology report, Mr. Keith had not taken the zolpidem and tramadol as prescribed by Dr. Battle on or immediately before the date of his death.  (DSMF ¶ 17; PRDSMF ¶ 17; see also PSMF ¶ 8 (stating that Mr. Keith "failed to take the zolpidem and tramadol as prescribed").)  Indeed, although Defendant's expert, Robert Bennett, Ph.D., contends that

13

post-mortem redistribution could have skewed the toxicology levels found at Mr. Keith's autopsy, Plaintiff's expert, Dr. Stephen Munday, opined that "no post-mortem redistribution, however significant, could account for [Mr. Keith's] toxicology levels being 10 times the therapeutic doses for such medication." (PSMF ¶ 11.)

According to Dr. Munday, Mr. Keith "took more than the prescribed amounts of both zolpidem and tramadol . . . [and his] having done so led to substantial central nervous system depression and contributed to his ultimate death by carbon monoxide poisoning." (PSMF ¶ 12.) Dr. Munday opined that "Mr. Keith was physically and mentally impaired by the excessive levels of both tramadol and zolpidem at the time of his death, and the effects of the excessive levels of

14

those medications would have worsened the effects of the carbon monoxide poisoning which would have prevented him from turning off the car or opening the car door and exiting." (Id. ¶ 13.) Dr. Bennett also testified in his deposition that taking tramadol and zolpidem could result in drowsiness and depression of the central nervous system, including brain function and the inability to think clearly, and that taking the two medications together would multiply those effects, potentially resulting in an inability to think clearly that could lead to mistakes resulting in accidental death. (Id. ¶ 15.) Dr. Bennett further agreed that Mr. Keith was under the influence of tramadol and zolpidem at the time of his death, and that the presence of those

15

medications together in his system at the time of his death contributed, at least in part, to Mr. Keith's death.  (Id.)

## B.   Procedural Background

On October 2, 2012, Plaintiff filed this lawsuit.  (Docket Entry No. 1.)  Count one of Plaintiff's Complaint contained an interpleader claim that sought to resolve various competing claims to the $250,000 death benefit payable under an insurance policy (the "Policy").  (Compl. (Docket Entry No. 1) ¶¶ 20-23.)  Count two of Plaintiff's Complaint sought a declaratory judgment holding that Plaintiff did not owe a benefit under the Policy's accidental death benefit rider.  (Id. ¶¶ 24-34.)

On July 2, 2013, the Court approved a Consent Final Order presented by the Parties and dismissed former

16

defendants Carla Richelle Keith Barton, Richard C. Keith, Jr., and Owen Funeral Home from this action.  (Order of July 2, 2013 (Docket Entry No. 77).)  The Court entered a final judgment as to the interpleader count of the Complaint. (Id.; Docket Entry No. 78.)

On February 10, 2014, Plaintiff filed its Motion for Summary Judgment.  (Docket Entry No. 118.)  Defendant Brooks filed a response to that Motion (Docket Entry No. 124), and Plaintiff filed a reply (Docket Entry No. 126).  The Court consequently finds that Plaintiff's Motion for Summary Judgment is ripe for resolution.

Defendant Brooks also filed a Motion for Partial Summary Judgment on February 10, 2014.  (Docket Entry No. 119.)  Plaintiff filed a response to that Motion (Docket

17

AO 72A

(Rev.8/8

Entry No. 121.)  The time period in which Defendant Brooks could file a reply in support of her Motion for Partial Summary Judgment has expired, and the Court consequently finds that the Motion is ripe for resolution.

## III.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of showing the Court that summary judgment is appropriate, and may satisfy this burden by pointing to materials in the record.  <u>Reese</u>, 527 F.3d at 1269 (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)); <u>Allen v. Bd. of Public</u>

18

AO 72A
(Rev.8/8
2)

Educ. for Bibb County, 495 F.3d 1306, 1313 (11th Cir. 2007).  Once the moving party has supported its motion adequately, the non-movant has the burden of showing summary judgment is improper by coming forward with specific facts that demonstrate the existence of a genuine issue for trial.  Allen, 495 F.3d at 1314.

When evaluating a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Optimum Techs., Inc., 496 F.3d at 1241.  The Court also must "'resolve all reasonable doubts about the facts in favor of the non-movant.'" Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir. 2008) (quoting United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558

19

(11th Cir. 1990)).    Further, the Court may not make credibility determinations, weigh conflicting evidence to resolve disputed factual issues, or assess the quality of the evidence presented.  Reese, 527 F.3d at 1271; Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1140 (11th Cir. 2007). Finally, the Court does not make factual determinations.  In re Celotex Corp., 487 F.3d at 1328.

The Court further observes that the standard for a motion for summary judgment differs depending on whether the party moving for summary judgment also bears the burden of proof on the relevant issue.  As the United States Court of Appeals for the Sixth Circuit has noted:

> "When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial.  But where the moving party has the burden–the

20

plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."

Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (quoting William W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984)). "Where the movant also bears the burden of proof on the claims at trial, it 'must do more than put the issue into genuine doubt; indeed, [it] must remove genuine doubt from the issue altogether.'" Franklin v. Montgomery County, Md., Civil Action No. DKC 2005-0489, 2006 WL 2632298, at *5 (D. Md. Sept. 13, 2006) (quoting Hoover Color Corp. v. Bayer Corp., 199 F.3d 160, 164 (4th Cir. 1999) (alteration in original)).

21

AO 72A
(Rev.8/8
2)

## IV.  Discussion

### A.   Interpretation of the Exclusion

Plaintiff contends that the Rider's drug exclusion "is plain, clear, and certain in its terms," and that it "expressly excludes coverage where death results directly or indirectly from the voluntary taking of medication or drugs 'unless, as prescribed by a physician.'" (Pl.'s Br. Supp. Mot. Summ. J. (Docket Entry No. 118-1) at 8.)   Defendant Brooks, in turn, argues that the Rider's drug exclusion is ambiguous and that the exclusion does not apply here.  (Def. Brooks's Br. Supp. Mot. Partial Summ. J. (Docket Entry No. 119-1) at 10-14.)  According to Defendant Brooks, a reasonable person could read the drug exclusion to mean that the insured "had to take his medication in the doses [his physician]

22

prescribed," or "to mean it applies only in the event the drugs were not prescribed by a physician." (<u>Id.</u> at 11.)

"Insurance in Georgia is a matter of contract and the parties to the contract of insurance are bound by its plain and unambiguous terms." <u>Hurst v. Grange Mutual Cas. Co.</u>, 266 Ga. 712, 716, 470 S.E.2d 659, 663 (1996). "[A]n insurer may fix the terms of its policy as it wishes, insuring against certain risks and excluding others, provided the terms are not contrary to law." <u>Id.</u>

A court construing an insurance policy must attempt "to ascertain the intention of the parties by looking to the insurance contract as a whole." <u>Ryan v. State Farm Mut. Auto. Ins. Co.</u>, 261 Ga. 869, 872, 413 S.E.2d 705, 707 (1992). A court first must take into consideration the

23

ordinary and legal meaning of the words used in the policy. Id.   Thus, "[i]f the terms of an insurance contract are 'unambiguous, clear, and capable of only one reasonable construction, they must be taken in their plain, ordinary, and popular sense as may be supplied by common dictionaries.'" York Ins. Co. v. Williams Seafood of Albany, Inc., 223 F.3d 1253, 1254 (11th Cir. 2000) (quoting Lemieux v. Blue Cross & Blue Shield, 216 Ga. App. 230, 231, 453 S.E.2d 749, 751 (1994)).   When construing an insurance policy, "'[t]he test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean.   The policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney.'"   Id. at 1254-55 (alteration

24

AO 72A
(Rev.8/8
2)

in original) (quoting <u>United States Fire Ins. Co. v. Hilde</u>, 172 Ga. App. 161, 163, 322 S.E.2d 285, 288 (1984)).

"Ambiguity is duplicity, indistinctness, an uncertainty of meaning or expression." <u>Barnes v. Greater Ga. Life Ins. Co.</u>, 243 Ga. App. 149, 150, 530 S.E.2d 748, 750 (2000) (internal quotation marks and citation omitted). "A word or phrase is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one." <u>Id.</u> (internal quotation marks and citation omitted). Further, if a provision of an insurance policy "is susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable, it is ambiguous." <u>Hurst</u>, 266 Ga. at 716, 470 S.E.2d at 663. Moreover, an insurance

25

policy is ambiguous if it "is confusing to a layman." <u>York Ins.</u> <u>Co.</u>, 223 F.3d at 1255.

If the Court finds that a policy provision is ambiguous, the Court must construe it strictly against the insurer, as the drafter, and in favor of the insured. <u>Hurst</u>, 266 Ga. at 716, 470 S.E.2d at 663. The Court, however, may not create an ambiguity by "'lifting a clause or portion of the contract out of context.'" <u>Titan Indem. Co. v. Hall County</u>, 202 Ga. App. 38, 39, 413 S.E.2d 213, 214 (1992) (quoting <u>Cherokee</u> <u>Credit Life Ins. Co. v. Baker</u>, 119 Ga. App. 579, 583, 168 S.E.2d 171, 175 (1969)).

"Exceptions and exclusions to coverage must be construed strictly in favor of the insured and against the insurer." <u>Furgerson v. Cambridge Mut. Fire Ins. Co.</u>, 237

26

Ga. App. 637, 639, 516 S.E.2d 350, 352 (1999).   If, however, the policy language is "clear, explicit, and unambiguous," the court must enforce the policy as written. <u>Ryan</u>, 261 Ga. at 872, 413 S.E.2d at 707; <u>Furgerson</u>, 237 Ga. App. at 639, 516 S.E.2d at 352; <u>see also</u> <u>Barnes</u>, 243 Ga. App. at 150, 530 S.E.2d at 750 ("Courts have no more right by strained construction to make an insurance policy more beneficial by extending the coverage contracted for than they would have to increase the amount of coverage." (internal quotation marks and citation omitted)).

Here, the Court finds that the drug exclusion contained in the Rider is not ambiguous.  The exclusion provides, in relevant part: "No benefit will be paid for death which results directly or indirectly from . . . [v]oluntary taking of drugs,

27

narcotics, barbituates, or sedatives, unless, as prescribed by a physician." (Stipulation Ex. 1 (Docket Entry No. 104-1) at 1.) The term "as prescribed by a physician" is capable of only one meaning--that the drugs must be both "prescribed by a physician" and taken in accordance with the instructions on the prescription. Contrary to Defendant Brooks's arguments, the Court cannot find that the phrase "taken" must be added before "as prescribed by a physician" to make this exclusion unambiguous. The Court consequently finds that the Rider's drug exclusion is unambiguous and is enforceable.[1]

---

[1]The Court acknowledges that its decision is contrary to Edwards v. Monumental Life Ins. Co., 812 F. Supp. 2d 1263 (D. Kan. 2011). In Edwards, the United States District Court for the District of Kansas concluded that an insurance policy exclusion that would deny benefits for "a Loss which is caused by, results from, or contributed to by taking of any drug, medication, narcotic or

28

As discussed above, the Rider's drug exclusion is enforceable.   The Court therefore denies Defendant Brooks's Motion for Partial Summary Judgment and grants the portion of Plaintiff's Motion for Summary Judgment concerning interpretation of the Rider's drug exclusion.

## B.   Benefits Under the Rider

Plaintiff has moved for summary judgment on the issue of whether accidental death benefits are payable under the Rider. The Parties have stipulated, for purposes of the instant Motions only, that "[b]ased on the medical and pharmacy records and the toxicology report, on or

---

hallucinogen, unless prescribed by a physician" was ambiguous. 812 F. Supp. 2d at 1271, 1273-74.   The Court, however, respectfully disagrees with the Edwards court's analysis.   On the contrary, Georgia's law of contract interpretation requires a conclusion that the Rider's drug exclusion is not ambiguous.

29

immediately before the date of his death, [Mr. Keith] had not taken the Zolpidem and Tramadol as prescribed by Dr. Battle."   (Stipulation (Docket Entry No. 104) ¶ 17.) Moreover, the evidence in the record supports that determination.   (PSMF ¶¶ 8-11.)[2]   Under those circumstances, the Rider's drug exclusion would bar payment of accidental death benefits under the Rider if Mr. Keith's death resulted "directly or indirectly" from his voluntary failure to take the zolpidem and tramadol as prescribed.

Plaintiff has presented evidence indicating that Mr. Keith's taking of the tramadol and zolpidem other than as

---

[2]As discussed supra Part I., Defendant Brooks admitted all of the statements contained in PSMF by failing to respond to them. Moreover, the record citations provided by Plaintiff support the statements contained in PSMF.

AO 72A

(Rev.8/8
2)

prescribed directly or indirectly contributed to Mr. Keith's death.  (<u>See</u> Decl. of Stephen W. Munday, M.D., M.P.H., M.S. (Docket Entry No. 118-3), Expert Report at 2 ("In my opinion, based on reasonable medical and scientific probability, Mr. Keith was physically and mentally impaired by the excessive levels of both tramadol and zolpidem at the time of his death, and the effects of the excessive levels of those medications would have worsened the effects of the carbon monoxide poisoning which would have prevented him from turning off the car or opening the car door and exiting.").   Indeed, Plaintiff's own expert, Dr. Bennett, testified as follows:

> Q   The toxicology report indicates that he had zolpidem and tramadol in his system, correct?
>
> A   Correct.

31

Q   And there's no dispute that, in fact, these medications were in his system at the time he died?

A   Correct.

Q   Okay.  And in your report, on page six, you indicate that Mr. Keith was under the influence, to some degree, of both zolpidem and tramadol, because they were detected in his system; correct?

A   Correct.

Q   Okay.  And the effects, as you've just recited them . . . and also in your report, that the effects of taking these two medications would be drowsiness; correct?

A   Correct.

Q   Would be depression of the central nervous system?

A   Correct.

Q   Including brain function and inability to think clearly?

32

A    Correct.

Q    And when they're in the body at the same time, you recite in your report that the effects would be multiplied, potentially resulting in an inability to think clearly which would lead to mistakes that could result in accidental death; right?

A    Correct.

Q    Okay.  So you would agree with me that . . . Mr. Keith was under the influence of these two medications at the time of his death?

A    Absolutely.

Q    And that the presence of those medications, particularly together in his system at the time of his death, contributed, at least in part, to his death; correct?

A    Yes.

Q    So his death resulted, at least in part --

A    Yes.

33

Q    From the presence of those drugs in his system?

A    Correct.

(Dep. of Robert M. Bennett, Ph.D. (Docket Entry No. 116) at 141-42.) Defendant Brooks failed to refute that evidence, and did not respond to the portions of PSMF that cited the evidence. Under those circumstances, the Court finds that no genuine dispute remains as to whether Mr. Keith's failure to take tramadol and zolpidem as prescribed contributed, directly or indirectly, to his death.

For the Rider's drug exclusion to apply, however, Mr. Keith must have voluntarily taken the zolpidem and tramadol other than as prescribed. In support of her contention that Mr. Keith did not voluntarily take the zolipdem and tramadol other than as prescribed, Defendant Brooks points to

34

testimony from her expert witness, Dr. Robert Bennett, indicating that zolpidem and tramadol may cause confusion and drowsiness, particularly when taken together, and that Mr. Keith consequently may have suffered from amnesia, which, in turn, caused him to take more medication while under that effect. (Bennett Dep. at 132, 141, 183-84; Expert Report of Robert M. Bennett (Docket Entry No. 115-1) at 6.) Dr. Bennett's opinions that Mr. Keith may have suffered from an episode of amnesia, which, in turn, caused him to unknowingly take more tramadol and/or zolpidem, are pure speculation. Defendant Brooks consequently cannot avoid summary judgment based on this argument.[3] See Cordoba

---

[3]Further, as discussed in a separate Order, Dr. Bennett's opinions concerning whether Mr. Keith's death was an accident or a suicide are unreliable, and, consequently, are inadmissible. Likewise, Dr. Bennett's opinions concerning possible post-mortem

35

AO 72A

(Rev.8/8
2)

v. Dillard's, Inc., 419 F.3d 1169, 1181 ("[U]nsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a <u>genuine</u> issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (emphasis and omission in original)

---

redistribution are inadmissible.

In any event, Dr. Munday testified that "no post-mortem redistribution, however significant, could account for [Mr. Keith's] toxicology levels being 10 times the therapeutic doses for these medications." (PSMF ¶ 11 (Munday Decl., Expert Report at 2).) Defendant Brooks failed to respond to PSMF ¶ 11, and thereby admitted it.

Moreover, the evidence in the record indicates that Dr. Battle, prescribed the zolpidem and tramadol for Mr. Keith. (Stipulation ¶¶ 5-6 & Ex. 2.) The evidence further indicates that Mr. Keith filled those prescriptions routinely in the months before he died. (Id.) Mr. Keith thus was familiar with the medications and their side effects. (See Bennett Dep. at 198 (agreeing that Mr. Keith "had been taking [zolpidem] for quite some time" and likely was familiar with its effects).) Under those circumstances, Defendant Brooks simply relies on pure speculation to support her contention that Mr. Keith did not voluntarily take the tramadol and zolpidem.

36

AO 72A

(Rev.8/8
2)

(internal quotation marks and citation omitted)); <u>Estate of Brennan v. Church of Scientology Flag Serv. Org.</u>, 832 F. Supp. 2d 1370, 1377 (M.D. Fla. Dec. 6, 2011) ("Attenuated and compound inferences and speculation uniformly fail to create a genuine issue of material fact sufficient to avoid summary judgment."); <u>Hornsby v. Three Dollar Cafe, III, Inc.</u>, No. CIVA1:03CV1668GET, 2006 WL 47471, at *5 (N.D. Ga. Jan. 9, 2006) ("Conclusory allegations, speculation, or immaterial factual disputes are not sufficient to avoid summary judgment.") (internal quotation marks omitted)); <u>Thomas v. City of Columbus</u>, 198 F. Supp. 2d 1360, 1367 (M.D. Ga. Mar. 4, 2002) ("Speculation and possibility are insufficient bases for avoiding summary judgment.").

37

AO 72A
(Rev.8/8
2)

In sum, there is no evidence that Mr. Keith involuntarily took the zolpidem or tramadol. See Gatt v. Continental Cas. Co., No. Civ. A. 104CV3023GET, 2006 WL 2617139, at *3 (N.D. Ga. Sept. 12, 2006) ("[T]here is no evidence that the ingestion of oxycodone by [the deceased] was anything other than intentional and voluntary. While plaintiff speculates that perhaps [the deceased] was involuntarily intoxicated after taking Percocet and oxycodone and then took a lethal dose of oxycodone, there is absolutely no evidence to support plaintiff's theory."). The Court therefore finds that accidental death benefits are not payable under the Rider, and grants Plaintiff's Motion for Summary Judgment.[4]

---

[4]As Plaintiff points out, the Rider covers death from accidental means, not death from accidental results. "Georgia law

AO 72A

(Rev.8/8 2)

# V.   Conclusion

ACCORDINGLY, the Court **GRANTS** Plaintiff's Motion for Summary Judgment [118].    The Court **DENIES** Defendant Brooks's Motion for Partial Summary Judgment [119].   The Court finds that benefits are not payable to Defendant Brooks under the accidental death

---

distinguishes between the terms accidental injury and injuries resulting from accidental means." <u>Gatt</u>, 2006 WL 2617139, at *3. "Where an injury is unexpected but arises from a voluntary action it is an accidental injury, but for injury to result from accidental means, it must be the unexpected result of an unforeseen or unexpected act which was involuntarily and unintentionally done." <u>Id.</u> (internal quotation marks and citation omitted). "Policy language which insures against bodily injury or death caused by an accident insures against unforeseen injuries caused by accidental means." <u>Id.</u> (internal quotation marks and citation omitted). "It must appear that the insured's death or injury arose by means utilized which were accidental." <u>Id.</u> "When an unusual or unexpected result occurs, by reason of the doing of an intentional act, however, with no mischance, slip, or mishap occurring in the doing of the act itself, the ensuing injury or death is not caused by accidental means." <u>Id.</u> (internal quotation marks and citation omitted).

39

AO 72A

(Rev.8/8
2)

rider associated with the insurance policy issued by Plaintiff.

Because this Order resolves all of the claims presented in

this case, the Court directs the Clerk to close this action.

IT IS SO ORDERED, this the 11 day of March, 2014.

_____
UNITED STATES DISTRICT JUDGE

40